The Rex Lumber Company, Appellant, v. W. B. Reed, Treasurer, *et al.*

**Constitutional Law:** TITLE OF STATUTE. The title of an act (Acts Twenty-fourth General Assembly, chapter 35), "An act to amend section 853 * * * of the Code, relating to the lien of taxes between vendor and vendee," which section made taxes on real estate, as between vendor and purchaser, a lien on the real estate on and after the last day of each year, is not sufficient to support a provision to aid in collection of taxes, that where a stock of goods is sold in bulk after assessment thereof for taxes, and before the tax becomes due, the auditor shall, on notice, change the name as to the owner, and any such tax shall be collectible against such purchaser as though the property had been assessed in his name. Such title does not indicate that additional means of collection are given to public officers, though the statute, in fact, does this.

*Appeal from Pottawattamie District Court.*—Hon. Walter I. Smith, Judge.

Saturday, December 17, 1898.

Action in equity to enjoin the collection of a personal property tax. There was a hearing on the merits, and a judgment in favor of the defendants for costs. The plaintiff appeals.—*Reversed.*

*Ross & Ross and Emmet Tinley* for appellant.

*C. G. Saunders* for appellees.

ROBINSON, J.—The plaintiff is the owner of a stock of lumber, coal and lime in the city of Council Bluffs, and the defendants are the treasurer and auditor of Pottawattamie county.   During the year 1893, and until the twenty-second day of March, 1894, the Council Bluffs Lumber Company owned a stock of lumber and carried on a lumber business in Council Bluffs, and on the date last named sold it to C. S. Rex and George B. Rex. On the same day they transferred it to the plaintiff.   Since that time the plaintiff has carried on a lumber business in Council Bluffs, selling from and adding to the stock from time to time, until at the time of the trial in the district court but a small part of the original stock purchased in March, 1894, remained in the yard.   While the Council Bluffs Lumber Company owned the stock, it was assessed to that company for the taxes of the years 1893 and 1894.   The taxes for the year first named were levied against the company, to the amount of one hundred and ninety-one dollars and seventy-two cents; and the defendants propose to so change the recitals in the tax list and tax records of their respective offices as to show that the tax of 1894, which amounts to one hundred and forty-five dollars and twelve cents, is a personal charge against the plaintiff.   The taxes for both years are wholly unpaid, and the defendants claim that the property in the lumber yard of the plaintiff is subject to seizure for their payment.   The plaintiff asks that the defendants be restrained from interfering with its property for the taxes specified, and from so changing the records of their respective offices as to charge those taxes to the plaintiff, and for general equitable relief.

I.   Prior to the year 1892 taxes were not liens on personal property in this state.  In that year the general assembly amended section 853 of the Code of 1873 by adding thereto

the following:    "And when a merchant or other person
assessed with personal property only, shall sell or transfer in
bulk any stock of goods or merchandise, after the taxes thereon
have become payable and remaining unpaid, all such unpaid
taxes shall become a lien upon such personal property in the
possession or under the control of such purchaser or vendee;
and when any such transfer occurs after the assessment and
before any such tax becomes due and can be paid, the auditor
shall, upon notice being given to him, change the name as to
the owner, and any such tax shall be collectible against such
owner, purchaser or vendee, the same as if such personal prop-
erty had been assessed in his or her name."    Acts Twenty-
fourth General Assembly, chapter 35.    The title of that act is
as follows:    "An act to amend section 853, chapter 1, title 6
of the Code, relating to the lien of taxes between the vendor
and vendee."    The plaintiff contends that the act embraces
two subjects, neither of which is expressed in the title; that it
is repugnant to section 29 of article 3 of the constitution of
this state, and is therefore void.    That section is as follows:
"Every act shall embrace but one subject, and matter properly
connected therewith; which subject shall be expressed in the
title.    But if any subject shall be embraced in an act which
shall not be expressed in the title, such act shall be void only
as to so much thereof as shall not be expressed in the title."
It is urged that the title in question fails to express the subject
of the act, in that the title imports that existing liens are to
be regulated, and the act is not regulative, but creative, author-
izing for the first time a lien on personal property in the
hands of a vendee, and imposing upon him a personal liability
for taxes accruing after, but levied upon an assessment made
before, the purchase.    It was said in *State v. County Judge,*
2 Iowa, 280, of the constitutional provision quoted, that its
intent was to "prevent the union in the same act of incongru-
ous matter, and of objects having no connection, no relation.
And with this it was designed to prevent surprise in legislation
by having matter of one nature embraced in a bill whose title

expressed another. It is manifest, however, that there must be some limit to the division of the matter into separate bills or acts. It cannot be held with reason that each thought or step towards the accomplishment of an end or object should be embodied in a separate act." The subject of an act is required to be expressed in the title only by the use of general terms. *State v. Forkner,* 94 Iowa, 1. In *Williamson v. City of Keokuk,* 44 Iowa, 88, an act entitled "An act to amend the charter of the city of Keokuk" was held sufficient to express the subject-matter of the first eight sections of the act, although they related to the extension of boundaries, the election, term of office, and duties of aldermen, the exclusive right to make wharves, the filling of vacant offices, the establishing of a recorder's court, the election and qualification of a recorder, and his compensation, but insufficient as to a section which purported to legalize an election. It is immaterial that an act contains a large number of provisions, if all are included in the subject expressed in the title, or are properly connected with it. *State v. Shroeder,* 51 Iowa, 197. In *McAunich v. Railroad Co.,* 20 Iowa, 338, the title of an act considered was, "An act in relation to the duties of railroad companies," and was held sufficient to include the subject of liability on the part of the companies for negligence of their agents and other employes. Is the act in question within the general rules which governed the cases cited? The title of the act describes it as an act to amend section 853 of the Code of 1873. That section as amended was as follows: "All taxes upon real estate shall, as between vendor and purchaser, become a lien upon such real estate on and after the thirty-first day of December in each year." Acts Twenty-first General Assembly, chapter 133. The purpose of the section was to make taxes upon real estate a lien thereon from the date named, "as between vendor and purchaser" only, and not to provide additional means for their collection by the officers charged with that duty. If real estate was sold before the date specified, the vendor, under that provision, was not liable to

the vendee for the payment of the taxes, although his contract or deed contained a covenant and warranty against incumbrances. *Sackett v. Osborn,* 26 Iowa, 146; *Baldwin v. Mayne,* 42 Iowa, 131. The making of taxes a lien on real estate for the benefit of the state, corporations, and others entitled thereto, was accomplished by section 865 of the Code of 1873, which made taxes upon real estate "a perpetual lien thereon against all persons except the United States and this state," and also made taxes due from any person upon personal property a lien upon any real property he owned, or to which he should acquire title, and authorized the county treasurer to collect delinquent taxes by the sale of any property upon which they were levied, or any other personal or real property belonging to the person to whom the taxes were assessed. The statute in controversy was germane to that section. It did not purport to fix the date when taxes on a stock of goods and merchandise sold in bulk should become a lien thereon as between the seller and purchaser, nor to establish and define their rights and liabilities as between themselves. The obvious purpose of so much of the act as relates to taxes which were due at the time the stock was sold or transferred was to afford means to aid in the collection of taxes levied on account of the stock; and we think that the portion of the act which related to such property transferred after the assessment was made, but before the taxes became due, including the provision that the auditor should upon notice of the transfer being given him, "change the name as to the owner," was primarily designed to accomplish the same purpose. Section 812 of the Code of 1873 provided that personal property should be "listed and assessed each year in the name of the owner thereof on the first day of January," except moneys and credits of associations and others specified. The act in question did not contemplate original assessments, nor in terms release the one who sold or transferred in bulk a stock of goods or merchandise after it had been assessed, but before the taxes thereon became due, from liability for the taxes.

Whether the act, had it been valid, would have had that effect, we need not determine, for the reason that such a result, if authorized, was merely incidental to the object which the act was really designed to accomplish.

It is said that sections 853 and 865 must be construed together; that the latter provided for liens on real property of personal property taxes, while the former fixed the date when the lien should become effective as between the vendor and vendee. But, as already indicated, we think the purposes of the two sections entirely different, although both relate to liens of taxes on real estate. The title of the act in question directed attention to the subject of the lien of taxes as between vendor and vendee, and perhaps was sufficient to include provisions making taxes on stocks of goods and merchandise sold in bulk a charge or lien upon the stock in the hands of the purchaser, for the purpose of fixing the rights and liabilities of the parties to the sale; but no one would have inferred from reading the title and the section which it specified that it was the purpose of the act to give to public officers additional means for the collection of taxes levied on account of such property, nor that the act had any reference to that subject. Therefore, we are forced to conclude that the title of the act does not express its subject, and that the act, for that reason, is in conflict with the constitution, and void. As tending to sustain this conclusion, see *Town of Cantril v. Sanier,* 59 Iowa, 26; *Henkle v. Town of Keota,* 68 Iowa, 334; *Fish v. Stockdale,* 111 Mich. 46 (69 N. W. Rep. 92); *City of Lansing v. Board of State Auditors,* 111 Mich. 327 (69 N. W. Rep. 723); *West Point W. P. & L. Imp. Co. v. State,* 49 Neb. 218 (68 N. W. Rep. 507); *Trumble v. Trumble,* 37 Neb. 340 (55 N. W. Rep. 869).

We find it unnecessary to consider other questions presented in argument. For the reasons shown, the judgment of the district court is REVERSED.